IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

L. QIYAM POGUE, et al.,

    Plaintiffs,                    No. CIV S-05-1873 MCE GGH P

    vs.

JEANNE WOODFORD, Director of
the California Department of Corrections,
et al.,                                ORDER &amp;

    Defendants.             FINDINGS AND RECOMMENDATIONS
_____/

Introduction

          Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: 1) plaintiff's motion to compel discovery, filed on May 3, 2007, to which defendants filed their opposition on May 21, 2007, after which plaintiff filed his reply on June 6, 2007; 2) plaintiff's second motion to compel further discovery, filed on August 1, 2007, to which defendants filed their opposition on October 15, 2007, to which plaintiff filed a reply on October 18, 2007; 3) defendants' motion to dismiss, filed on October 25, 2007, brought by defendants Tilton, in his official capacity, and Woodford, in her individual capacity, to which plaintiff filed an opposition on November 5, 2007, after which defendants filed a reply on November 16, 2007. Thereafter, defendant Tilton, in his

1

individual capacity, defendant Hickman, in his individual capacity, and defendant Yates, in his individual and official capacities, joined the dismissal motion, at which point plaintiff filed a further opposition, on January 24, 2008.

Background

This case was initiated by a complaint, filed on September 19, 2005, in which multiple co-plaintiffs purported to bring a class action. The court determined, upon screening that this matter might be appropriate for appointment of counsel, but voluntary counsel could not be procured. See Orders, filed on October 13, 2005, and on January 13, 2006.[1] Plaintiffs were informed that they would have to continue pro se. In the January 13, 2006, Order, service was found appropriate upon defendant Jeanne Woodford, then the Director of the California Department of Corrections (now the California Department of Corrections and Rehabilitation (CDCR)). Defendant Woodford was served pursuant to the Order, filed on February 24, 2006. Subsequently, CDCR Secretary Tilton was substituted in,[2] in his official capacity only, in place of defendant Woodford, but only in her official capacity. See Order, filed on September 8, 2006. By Order, filed on October 17, 2006, plaintiff was informed that it was unlikely that this matter could be certified as a class action, and that the action would proceed only as to plaintiff Pogue. When plaintiff nevertheless filed a first amended complaint naming himself and seven others as plaintiffs, the court, by Amended Order, filed on April 30, 2007, determined that each plaintiff should proceed separately and the claims of each plaintiff were thereby severed, and each plaintiff was granted leave to file a second amended complaint in a separate action, with plaintiff Pogue to proceed as sole plaintiff in the instant action.

---

[1] The undersigned previously stated that voluntary counsel had been unsuccessfully sought both from the King Hall Civil Rights Clinic and from the Prison Law Office in San Quentin. Order, filed on 1/13/06, p. 1.

[2] Plaintiff, who seeks both prospective injunctive relief and money damages, had sought to substitute Roderick Hickman in for defendant Woodford, as her successor, but in the interim Secretary Tilton had been appointed as Acting Secretary of CDCR. See Order, filed on 9/8/06.

Upon screening plaintiff's subsequently filed second amended complaint, the court stated as follows:

> The court construes plaintiff's second amended complaint as one brought on those claims for which he has standing. That is, to the extent that plaintiff claims that his rights under the First Amendment Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA) are violated because he is not permitted to attend Jumu'ah prayer services on Fridays without being charged custody credits; that he is being penalized for wearing his beard and hair in accordance with his beliefs; that he is being denied a Halal diet; and that his right to practice his religion is otherwise infringed at the prison at Pleasant Valley State Prison (DVSP) where he is incarcerated, plaintiff states a cognizable claim for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b). If the allegations of the second amended complaint are proven, plaintiff has a reasonable opportunity to prevail on the merits of this action.
>
> However, plaintiff may not make broad and generic claims against all California Department of Corrections and Rehabilitation (CDCR) facilities and, by concurrently filed Findings and Recommendations, the court will recommend dismissal of plaintiff's claims against all unnamed wardens of CDCR prisons, firecamps and community correctional facilities, as well as plaintiff's claims against CDCR itself. Instead, plaintiff will be permitted to proceed against the warden of the facility where he is currently incarcerated, James A. Yates, Pleasant Valley State Prison (PVSP) warden, as well as against defendants Woodford, Hickman, and Tilton. In addition, defendant Woodford has already been served, and remains in this action in her individual capacity, while defendant Tilton has already been substituted in, in his official capacity only, for defendant Woodford, but has not been served in his personal capacity. See, Orders, filed on 1/13/06, 2/24/06, 9/8/06.

Order, filed on September 26, 2007, pp. 1-2.

In the same Order, the court ordered defendant Woodford, who had already been served and against whom plaintiff proceeded in her (Woodford's) individual capacity, to file a response to the second amended complaint in 30 days, and found service appropriate for CDCR Secretary Tilton, who had already been substituted in in his official capacity, in his individual capacity; for Roderick Hickman, Woodford's successor in office, in his individual capacity only; and Warden Yates.  The court's Findings and Recommendations, also filed on September 26, 2007, recommending dismissal of CDCR and all unnamed wardens of CDCR prison, firecamps

1  and community correctional facilities be dismissed, were adopted by Order, filed on March 17,
2  2008.
3        By Order, filed on November 15, 2007, the court directed service upon defendants
4  Tilton, Hickman and Yates.
5  Motion to Dismiss
6        Although filed after plaintiff's motion to compel, it is appropriate to adjudicate
7  defendants' motion to dismiss first. Defendants seek dismissal of this action, pursuant to non-
8  enumerated Fed. R. Civ. 12(b), for plaintiff's failure to exhaust administrative remedies.
9        *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*
10       In a motion to dismiss for failure to exhaust administrative remedies under non-
11 enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of
12 raising and proving exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The
13 parties may go outside the pleadings, submitting affidavits or declarations under penalty of
14 perjury, but plaintiff must be provided with notice of his opportunity to develop a record. Wyatt
15 v. Terhune, 315 F.3d at 1120 n.14. The court provided plaintiff with such fair notice by Order,
16 filed on February 24, 2006 (and again by an Order, filed on November 15, 2007).
17       Should defendants submit declarations and/or other documentation demonstrating
18 an absence of exhaustion, making a prima facie showing, plaintiff must oppose that showing, but
19 defendants bear the burden of proof. Plaintiff may rely upon statements made under the penalty
20 of perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the
21 matters stated and plaintiff calls to the court's attention those parts of the complaint upon which
22 plaintiff relies. If the court determines that plaintiff has failed to exhaust, dismissal without
23 prejudice is the appropriate remedy for non-exhaustion of administrative remedies. Wyatt v.
24 Terhune, 315 F.3d at 1120.
25 \\\\\
26 \\\\\

*PLRA Requirements*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Inmates seeking injunctive relief must exhaust administrative remedies. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999). In Booth v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures. Therefore, inmates seeking money damages must also completely exhaust their administrative remedies. Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages). The United States Supreme Court has held that exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. ___, 126 S. Ct. 2378 (2006). Thus, in the context of the applicable PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, supra, 126 S. Ct. at 2382. Moreover, 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

\\\\\

\\\\\

*Administrative Exhaustion Procedure*

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38

Defendants point out that plaintiff was transferred to Pleasant Valley State Prison (PVSP), on January 6, 2006, from Sierra Conservation Center (SCC), having been housed there from February 10, 2005, until his transfer to PVSP. Prior to being incarcerated at SCC, plaintiff had been housed at California State Prison (CSP)-Solano. Motion to Dismiss (MTD), p. 3, Declaration (Dec) of D. Robert Duncan, counsel for defendants, ¶ 3, Exhibit (Ex.) B.

Defendants argue that plaintiff's only administrative appeal addressing the issues implicated herein, that is, those claims for which plaintiff now proceeds against PVSP, was exhausted after the filing of the original complaint, on September 19, 2005. MTD, p. 4; N. Grannis[3] Dec, ¶ 5, Ex. A; C. Hudson[4] Dec, ¶¶ 7, 10, Ex. D. Those issues included plaintiff's claims that the right of Muslim inmates to practice Al-Islam was being violated by PVSP staff due to Muslim inmates being denied: 1) a community prayer rug in C yard; 2) religious prayer oils; 3) a religious Halal/Kosher diet; 4) the right to attend Friday Jumu'ah religious service; 5) the right to wear a beard and shoulder length hair; and 6) single cell status. Hudson Dec, ¶ 10, Ex D. This appeal no. PVSP-C-06-00727 was not exhausted at the director's level until August 25, 2006. Id. As noted, of course, this action was initiated on September 19, 2005. Thus, defendants conclude, this action should be dismissed. MTD, pp. 5-9.

---

[3] Identified in her declaration as CDCR Chief of the Inmate Appeals Branch.

[4] Identified in her declaration as CDCR Appeals Coordinator at PSVP.

1    In opposition, plaintiff does not dispute that this action was initiated on September
2 19, 2005, and that he was transferred from SCC to PVSP on January 6, 2006.  Opposition, filed
3 on Nov. 5, 2007 (Opp. I), p. 3.  He argues that he began exhausting his administrative remedies
4 at PVSP as soon as he was granted access to the law library.  Opp. 1, p. 3. As plaintiff points out,
5 however, it would be impossible to have exhausted administrative remedies at PVSP in an action
6 filed prior to his transfer to PVSP.  Opp., p. 4.  It was so that defendants could not avoid suit that
7 plaintiff attempted initially to name as defendants the wardens of all 33 prisons.  Id. at 5.
8 Plaintiff further avers that while housed at SCC in 2005, he and other Muslim inmates filed a
9 group appeal contesting the alleged violations of RLUIPPA, identifying the appeal as SCC
10 Appeals Log # SCC-X--05-00239.  Opp. II, filed on Jan. 24, 2008, p. 2.  Plaintiff contends that
11 only after full administrative exhaustion of that grievance did plaintiff and other Muslims initiate
12 this action.[5]  Opp. II, pp. 2-3.

13    Thus, in summary, a situation exists where plaintiff exhausted his initial claims,
14 some of them against higher-placed CDC officials, prior to filing his lawsuit, but then he was
15 transferred to a different institution where he claims he was subject to the same alleged
16 violations.  This appears to be a situation of first impression in terms of exhaustion law.

17    Firstly, plaintiff need only exhaust those claims prior to filing action for which
18 administrative processes are *available.*  42 U.S.C. § 1997e(a).  A remedy at PVSB was, of
19 course, not available at the time of the filing of this lawsuit.  Of course, it is patently evident that
20 plaintiff might be forever foreclosed from proceeding in an action against defendants on his
21 claims if this court were to find his claims herein unexhausted, which claims can be characterized
22 as unexhausted only if form is permitted wholly to triumph over substance.  Nothing is to stop
23 plaintiff from being transferred again at any point in the litigation, a circumstance over which he
24 has no control, whether at least in part for an ulterior purpose of forestalling litigation or for an

---

[5] While plaintiff does not attach the SCC grievance, defendants do not contest the point.

innocuous and legitimate reason, whereupon plaintiff would have to initiate administrative grievances against each new institution before proceeding in an action. While the court does not intend to suggest that defendants would be prone to engage in manipulation of this matter, nevertheless, in the unique circumstances of this case, the court feels compelled to find that plaintiff appears to have pursued administrative remedies for alleged obstacles he faced in trying to practice his religion at PVSP, within a reasonable time upon his transfer there. Defendants' Ex. D (to Hudson Dec) demonstrates that the appeal was initiated in early to mid-February, 2006, and, as they have noted, plaintiff was transferred to PVSP in January, 2006, that is, about a month earlier. Because the instant cast presents a situation beyond the parameters of McKinney, supra, 311 F.3d 1198, the undersigned will recommend denial of defendants' motion. In doing so, the court also notes that, with the exception of defendant Yates, defendants would have been embraced by the gravamen of plaintiff's claims in the appeal originating at SCC, which evidently was administratively exhausted prior to the commencement of this case, certainly as to any claims for money damages for alleged constitutional violations of plaintiff's right to practice his religion there. See below.

Motions to Compel

Any party has the right to discovery of "any matter, not privileged, that is relevant to the claim or defense of any party...." ; thus, the scope of discovery under Fed. R.Civ.P. 26(b)(1) is broad. [Discovery may be obtained as to any unprivileged matter "relevant to the claim or defense of any party...." Id.] Discovery may be sought of relevant information not admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The court, however, may limit discovery if it "....is unreasonably cumulative or duplicative," or can be obtained from another source "that is more convenient, less burdensome, or less expensive; or if the party who seeks discovery "has had ample opportunity by discovery ...to obtain the information sought"; or if the proposed discovery is overly burdensome. Fed. R. Civ. P. 26(b)(2)(i)(ii) and (iii).

With regard to plaintiff's pending motions to compel discovery, in the Order, filed on September 26, 2007 (p. 3), this court initially stated the following, in denying defendants' motion for a protective order to stay discovery as overbroad:

> Defendants complain that plaintiff in his requests for discovery seek information concerning all thirty-three prisons. In order to adjudicate plaintiff's pending motions to compel, the court must review the requests for their relevance to his claims regarding PVSP's policies toward Muslim inmates. In other words, plaintiff may be permitted to seek discovery with respect to CDCR policies and procedures that implicate PVSP's policies, conditions, procedures, affecting the manner in which plaintiff is permitted to practice his religion in that facility.[6]

The court now notes, as well, that to the extent that plaintiff initiated this action while at SCC before being transferred to PVSP, on claims for both money damages and injunctive relief, that his second amended complaint should be construed as encompassing, as to his claims for money damages, any alleged injuries arising from defendants' policies as implemented at SCC with respect to any alleged infringement of his right to practice Islam there as well.[7]

Both plaintiff and counsel for defendants appear to be confused about certain of the requirements for discovery in this case. See concurrently filed Discovery Order.[8] Review of the Discovery Order will clarify, for example, that the parties have 45 days, not 30, to respond to discovery requests and that, because the plaintiff is an inmate proceeding pro se, the parties are

---

[6] The court did not engage in a review at that time because the undersigned therein denied the protective order, but granted defendants twenty days to file their response to the second motion to compel.

[7] Plaintiff has alleged that Muslim inmates in prisons other than those at CSP-Solano, where he was evidently housed before being transferred to SCC, are not afforded the same rights to practice their religion, at least post-Mayweathers (Case No. Civ-S-96-1582 LKK); thus, plaintiff's claims herein do not implicate conditions at CSP-Solano. See Second Amended Complaint, p. 7.

[8] This order had not yet issued in this case because the court's Discovery Order is generally not issued until defendants have answered, which, of course, has not yet occurred. In this case, which has been very prolonged in getting beyond the preliminary stages, however, a Scheduling Order, which will have to be vacated, had been issued.

not under an obligation to meet and confer before bringing a motion to compel, and thus need not file a joint statement re: discovery disagreement per Local Rule 37-251(c), unless ordered to do so by the court. The court will vacate the February 9, 2007, Scheduling Order, which has discovery and pretrial motion deadlines that have been rendered ineffectual.

In the first motion to compel (MTC), plaintiff expresses frustration over what he perceives to be the general lack of cooperation of the defendants in addressing his discovery requests served upon defendant Tilton, attaching defendants' responses to his requests for admission, requests for production, and interrogatories to his interrogatories. The court notes that plaintiff seeks discovery related to all thirty-three state prisons in an effort to demonstrate that CDCR has a "blanket policy" of denying Muslim inmates their constitutional right to practice their religion, and of their rights under RLUIPA. While plaintiff may seek to demonstrate such an alleged policy, he is not permitted to proceed as though on behalf of Muslim inmates statewide and is confined to seeking discovery from defendants with regard to alleged constitutional violations to which he, himself, has been subjected, for purposes of this action, i.e., at SCC and at PVSP.

The court's review of plaintiff's three requests for admission served upon defendant Pogue reveal that, although the defendant interposed objections, he did not refuse to respond to the request, but denied each one. Therefore, plaintiff's motion as to the requests for admissions is denied. With regard to defendant Tilton's initial interrogatory responses, which responses were only in the form of objections, the court's review indicates that the defendant addressed that deficiency by providing amended substantive responses to those interrogatories. See attachment to Duncan Dec in support of opposition to MTC. Generally, to the extent that no additional information was provided in the amended responses, defendant Tilton had a legitimate basis for not doing so. For example, in request for admission no. 1, plaintiff had sought defendant Tilton's admission to the following, that while he has been employed as CDCR Director:

10

> there is no established policy throughout CDCR to allow the religion of Al-Islam to be practiced equally in all 33 state prisons, including but not limited to no free staff Imams being hired at each 33 prisons [sic]; no allowance of a religious Halal or Kosher diet for the practicing Muslims; no established plan to allow each of the inmate population at each different prison to partake in being allowed to order special religious items such as Prayer Oils, Prayer Rugs, Prayer Beads.

MTC, p. 15.

After raising objections, defendant Tilton stated:

> Defendant denies Request for Admission No. 1. The established policy throughout the CDCR is to reasonably accommodate the religious and spiritual welfare of the inmates. CDCR adheres to the requirements of title 15 of the California Code of Regulations, which states that institution heads shall make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates. CAL. CODE REGS. tit.15, § 3210(a).[9]

Id.

In the amended interrogatory responses, as to interrogatory no. 2, defendant made no further amendment. Therein plaintiff asks defendant Tilton to "identify all witnesses with potential knowledge of the basis of your response," if the defendant did not admit the first request for admission that, inter alia, "there is no established policy throughout CDCR to allow the religion of Al-Islam to be practiced equally in all 33 state prisons....," defendant stated the following:

> Objection. This request seeks information that is irrelevant to any claim. Although this case is limited to inmate Pogue and the facilities in which Pogue has been housed, the request seeks information concerning all thirty-three prisons. In addition, Interrogatory No. 2 is unduly burdensome requesting the names, titles, and locations of all the persons familiar with CDCR policy. All of the administrators in each of the CDCR facilities have knowledge of the policy and practice of CDCR to adhere to the requirements of title 15 of the California Code of Regulations,

---

[9] The court sets forth herein CAL. CODE REGS. tit.xv, § 3210(a): "Institution heads shall make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates, including, but not limited to, affording inmates a reasonable accommodation to attend a scheduled Religious Service if they are unable to do so due to conflicting work/education assignments. Reasonable accommodation may include, but is not limited to, modified work schedule, use of accrued time or allowable breaks, granting of a job/assignment change, changes of regular days off, etc. Use of reasonable accommodation shall in no way adversely impact an inmate's credit earning status."

> which requires institution heads to make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates. Cal. Code Regs. tit. 15, § 3210(a). The names, titles, and locations of many prison officials are publicly available, and it is unduly burdensome for defendant to respond to plaintiff's request.

Duncan Dec in Support of Opposition (Opp.) to MTC, pp. 3-4. Defendant Tilton need not provide plaintiff with the names of all CDCR administrators, and no more substantive response should be required to this interrogatory or for the similarly burdensome interrogatory no. 8, again seeking the identities of everyone with knowledge of CDCR policy. In Interrogatory No. 13, plaintiff seeks the identity of all "witnesses past and present employees of CDC/CDCR" who have personal knowledge of CDCR's compliance with RLUIPA vis-à-vis the Muslim inmates in all 33 prisons, an unreasonably vague, overbroad and burdensome request. The same objection applies to Interrogatory No. 14, seeking a description of all documents making reference to CDCR's compliance with RLUIPA.

In his reply, plaintiff appears to confuse defendant's objections to a discovery request after which a substantive response is provided with a failure to respond, or he disputes the substance of the defendant's substantive response. For example, in defendant Tilton's amended responses to plaintiff's Interrogatory No. 1, No. 6, and No. 22, wherein defendant asserts in part that "a vegetarian diet, which complies with all Halal requirements, is provided to Muslim inmates at Pleasant Valley State Prison....", plaintiff takes great umbrage, disputing that an all vegetarian diet is insufficient to meet such requirements. Reply, pp. 2-3, 13. If plaintiff is attempting to demonstrate that prison officials discriminate against Muslims by refusing to provide Halal meats, he has his response from the defendant, which unequivocally states that the diet provided meant to meet Halal requirements is vegetarian at PVSP. This response may assist him in his claim, or it may not, but the court can require no further substantive response to his interrogatory. If plaintiff seeks to uncover the authority upon which defendant Tilton concludes that a vegetarian diet complies with all Halal requirements, he should have framed such an interrogatory to elicit that response.

On the other hand, in Interrogatory No. 17, plaintiff asks:

> Identify all persons (past employees are to be included) who participated in the decision not to allow the <u>Mayweathers</u> settlement agreement to be allowed to be extended to all other 32 prisons.

MTC, p. 25.

In the amended response, defendant states:

> Objection. This request seeks information that is irrelevant to any claim. Although this case is limited to inmate Pogue and the facilities in which Pogue has been housed, the request seeks information concerning all thirty-three prisons. Additionally, it is unduly burdensome to identify all persons who create or follow CDCR policy. Also, Interrogatory No. 17 is irrelevant because the *Mayweathers* settlement concerned religious exercise by Muslims at CSP-Solano and whether the settlement agreement was extended to other prisons is irrelevant to any claim or defense in this suit.

Id.

While the inquiry could have been framed more artfully, defendant is not correct to conclude that plaintiff is precluded from discovery that has statewide application if that application would necessarily affect the alleged restrictions to which plaintiff was subjected at PVSP (or SCC). That the <u>Mayweathers</u> settlement concerned issues that were intended to be interpreted by CDCR officials as narrowly tailored solely for application at CSP-Solano, given that its subject concerned the application of constitutional principles regarding the inmates' rights to practice their Muslim religion is at best an arguable proposition. Therefore, if defendant has substantive information responsive to this interrogatory, he must provide it to plaintiff within 20 days of the date of this order.

In Interrogatory No. 20, plaintiff states:

> Describe your understanding of the CDC/CDCR guidelines concerning how Al-Islam is to be allowed to be practiced in all 33 prisons.

MTC, p. 26.

\\\\\

In the amended response, defendant posits the following objections:

> Objection. This request seeks information that is irrelevant to any claim. Although this case is limited to inmate Pogue and the facilities in which Pogue has been housed, the request seeks information concerning all thirty-three prisons. Additionally, Interrogatory No. 20 is vague and ambiguous since it does not specify a particular type of guideline or religious practice.

Plaintiff is entitled to any CDCR guidelines regarding the Muslim inmates' ability to practice Islam to the extent that any such guidelines are applicable to all the prisons, which would necessarily include the ones in which plaintiff has been housed. If defendant Tilton has substantive information responsive to this request, it must be provided to plaintiff within 20 days of the date of this order.

In Interrogatory No. 21, plaintiff makes the following request:

> Describe why each prison currently has different Operational Procedures concerning how Al-Islam is to be allowed and how different prisons each have a different set of rules on how Al-Islam is to be practiced.

MTC, p. 26.

In the amended response, defendant Tilton states:

> Objection. This request seeks information that is irrelevant to any claim. Although this case is limited to inmate Pogue and the facilities in which Pogue has been housed, the request seeks information concerning all thirty-three prison. Without waiving the foregoing objections, although different institutions have different safety and security concerns, and different resources available that may account for the difference in their Operation Procedures, reasonable efforts are made at each facility to permit the practice of all religions.

Id. at 26-27.

In his reply, plaintiff states that the deprivations of which he is complaining include:

> failure to supply him a Halal religious diet consistent with his Islamic Laws; failure to allow him to purchase religious prayer oils and other religious artifacts; failure to supply a religious leader (Imam) to administer to plaintiff's spiritual needs; making plaintiff shave his beard off and cut his hair in violation of his RLUIPA

> rights and threatening him with disciplinary actions if he did not
> comply; refusal to allow plaintiff access to the chapel on Fridays[,]
> the day of religious worship[;] making him and other Muslims and
> guests to conduct Islamic services on the prison yard and plaintiff
> is made to prostrate/pray on the same ground where inmates spit all
> day long; confiscating over $60 worth of plaintiff's religious prayer
> oils after he was allowed to purchase them at CSP-Solano.

Reply, p. 6.

In light of plaintiff's specific claims, defendants' substantive response to Interrogatory No. 21 is too vague. If defendant has substantive specific information regarding why the prisons at which plaintiff has been housed, most particularly, SCC and PVSP, have different Operational Procedures concerning how Islam is to be practiced, as defendant has conceded that different procedures may apply, he must provide a further substantive response to this interrogatory within 20 days of the date of this order. As to any further response as to the interrogatories that are the subject of plaintiff's motion, the motion is denied. Also denied is plaintiff's request for any further response to his request for production of documents. In his reply, plaintiff has submitted a number of exhibits, wherein it is unclear whether defendant has supplied any of the documentation or not, and plaintiff has not clearly identified with the necessary particularity any request for production of documents for which he has not received a response/production or the deficiency of any such response. Therefore, to the extent plaintiff seeks the court to compel further production to his document requests, the motion will be denied as the deficiencies have been insufficiently identified.[10]

To his second motion to compel (MTC2), plaintiff attaches the amended responses to his Interrogatories, that were the subject of the immediate discussion above, and complains of deficiencies therein. To that extent, therefore, the second motion is denied as moot. With respect to the alleged deficiencies in defendant's responses to his requests for production,

---

[10] In his reply to the first motion, plaintiff also includes a second set of requests for production and of interrogatories directed to defendant Tilton, which it is not even clear were yet served upon defendant, and which cannot be addressed herein.

plaintiff failed to include the requests and responses in his second motion to compel.  However, in the second motion, plaintiff takes particular issue with defendant's response to his request for information regarding the Mayweathers settlement agreement.  Referring back to the initial motion, in request no. 5, plaintiff sought "Copies of any and all memorandums generated by any and all department [sic] of CDCR concerning how the Mayweathers settlement agreement was to be handled within CDC/CDCR."  MTC, p. 10.  In response, defendants stated:

> Objection.  This request seeks information that is irrelevant to any claim or defense.  Although this case is limited to inmate Pogue and the facilities in which Pogue has been housed, the request seeks any and all memorandums generated by any and all departments of CDCR.  Moreover, the *Mayweathers* settlement only applies to CSP-Solano and information relating to the implementation of the settlement will not prove any claim or defense relating to the Sierra Conservation Center.  Additionally, Request No. 5 is unduly burdensome because even if the documents had some slight relevance, the burden of producing them would far outweigh their usefulness.  Finally, the request seeks documents related to litigation that are protected by the attorney-client privilege and attorney work-product privilege.

Id.

The court's review of the exhibits plaintiff submitted in reply to defendant's opposition to his first motion to compel indicates that plaintiff has a copy of the Mayweathers private settlement agreement and release of settled claims, signed by the parties in June of 2000. Reply, pp. 66-72.  Defendant Tilton need not submit another copy to plaintiff.

However, the remainder of defendant's response is problematic.  First, defendant unequivocally asserts that the Mayweathers settlement only applies to CSP-Solano, but then that the documentation reflecting upon the application of Mayweathers to other prisons is so voluminous that the burden of producing such outweighs the probative value.  The court determines otherwise in that formal applications or rejections of applications of Mayweathers to other prisons might well affect plaintiff's prisons.   Moreover, defendant cannot simply state that some unidentified number of documents pertinent to the application of Mayweathers involve the attorney-client privilege of work product immunity.  There is no exemption from privilege log

16

requirements in prisoner litigation.

Therefore, defendant Tilton shall produce those documents which reference application of Mayweathers to prisons aside from CSPO-Solano, or provide a privilege log identifying the documents withheld. The documents shall be produced within 20 days of the filed date of this order.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel, filed on May 3, 2007 (# 32), is granted as to plaintiff's Interrogatories No. 17, No. 20 and No. 21, and defendant Tilton must provide responses or further responses, as set forth above, within 20 days of the date of this order; the motion (#32) is denied in all other respects.

2. Plaintiff's second motion to compel, filed on August 1, 2007 (#41), is denied as moot with respect to plaintiff's interrogatory requests; and granted with respect to his request for production of documents only to the extent as modified and set forth above, and defendant Tilton to provide production to the modified request within 20 days, and the motion is otherwise denied.

3. The Scheduling Order, filed on February 9, 2007 (#23), is hereby vacated.

IT IS RECOMMENDED that defendants' motion to dismiss, filed on October 25, 2007 (#75), be denied, and defendants be directed to file an answer within 30 days of adoption of these Findings and Recommendations, should that occur.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

\\\\\

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: 03/20/08

4                                        /s/ Gregory G. Hollows

5                                        GREGORY G. HOLLOWS
                                          UNITED STATES MAGISTRATE JUDGE

6
   GGH:009
7  pogu1873.mtd+